LOTTINGER, Judge.
This is an expropriation proceeding. The taking was occasioned by and for the purpose of widening Range Road, between Baton Rouge and Denham Springs in Livingston Parish, from two to four lanes. In addition to the property taken for widening the road, two drainage servitudes were also taken which by stipulation were analogized to an actual taking in fee of the subject property, and there were two construction servitudes totaling 1,132.56 square feet which were tied up for about three years. The subject property is in Denham Springs on the west side of Range Road, south of Highway 190 and North of Interstate 12. The Lower Court rendered judgment in favor of defendants and against the plaintiff in the sum of $3,170.81 for the part taken and for rental on the servitudes, subject to a credit, for the amount previously deposited by plaintiff in the registry of the court, together with legal interest on the balance from date of judicial demand until paid. The Lower Court also awarded expert witness fees and taxed these as costs, and it assessed all costs against the State of Louisiana, through the Department of Highways. From this judgment, the State of Louisiana, through the Department of Highways, has appealed. Defendants have not appealed or answered this appeal.
The two appraisers for plaintiff found just compensation to be $1,277 and $1,221 while the appraisers for defendants placed values of $5,182 and $5,414 on the part taken. Plaintiff’s appraisers found the highest and best use to be residential and placed a value of twenty-two cents per square foot on the part taken. Defendants’ appraisers found the highest and best use to be commercial and placed a value of ninety cents per square foot on the part taken. None of the appraisers found any damage to the remaining property. No reasons for judgment were given by the Trial Court, and it is impossible to determine what value per square foot the Trial Judge placed on the land because we do not know what amount was awarded for the use of the construction servitudes; however, it appears that he valued the land at somewhere between fifty and sixty cents per square foot.
The fifty to sixty cents per square foot found by the Trial Court is much more than any value testified to for the value of residential land in the vicinity, therefore it can be concluded that he found the highest and best use to be commercial. Plaintiff submits that the Trial Court’s finding of highest and best use as commercial was manifest error.
The subject property consists of two lots adjacent and in common ownership, but in two residential subdivisions. One lot is Lot 5, Miley’s Subdivision, the other is Lot 2, Shelby’s Homesites. The use is and was, at the time of the taking, residential, and it was zoned residential. There is no commercial use of property for several blocks, the nearest commercial use is at the corner of Range Road and Highway 190, *379 estimated to be from three to five blocks north of the subject property.
It appears that the sole question is the highest and best use of the subject property, and whether the Trial Court was manifestly erroneous in its determination that the subject property had commercial value. In summary, plaintiff’s witnesses argue that since residential use is being made of the subject property and nearby property, that its highest and best use is residential. On the other hand, defendants’ witnesses point out that purchasers in the vicinity have obviously paid a value exceeding residential value for comparable property. Defendants’ witnesses point out that certain purchasers intend to make commercial use of nearby property once the road construction work has been completed, and that the subject property is well suited for any commercial use. They testified that changing the zoning from residential to commercial would not present a problem. Mr. Kermit Williams, one of the defendants’ witnesses, testified as follows:
“A. The highest and best use of subject property was commercial in character and Range Road was in a transitional stage all through that area.
Q. On what do you base that conclusion Mr. Williams ?
A. On the fact that commercial was steadily locating on Range Road and that the interstate highway was an assured thing prior to the date of taking of this property, and the volume of traffic was such that commercial investors were buying up sites up and down the road. Some sites had been bought in residential zoning and rezoned to commercial zoning not far from subject property . . . so it was my opinion that the typical user of land to build homes would not deliberately build a home fronting on Range Road considering the volume of traffic and the noise factor, but that commercial users would readily buy it at a reasonable commercial value. This tract is about an acre and almost two tenths, so that with the frontage it had, particularly since it also had frontage on two side streets it made a very desirable piece for a commercial site.”
Mr. Williams further testified on cross examination as follows:
“A. Well Mr. Jones I can site you any number of sales that were sold for commercial purposes. As to when and how and what they would build on it I think that is left to the judgment of the buyer, but that doesn’t preclude the fact that these lands were sold to the buyer for commercial use, because I have checked every one of these out. Now it is quite possible that the widening of Range Road has prevented many commercial users from beginning anything until the total completion and full acceptance of Range Road. I would say that that’s been a very strong inhibitant against anybody starting any type construction until such a thing had been completed. So to answer your question a little more specific there are very few in the area other than at each end of the road, but in my opinion it is because the road itself has taken quite awhile to build and ' I’m not sure that it’s fully accepted as yet.”
Plaintiff argues that, for the property to have the highest and best use of commercial, there must be actual commercial use in the vicinity. Defendants on the other hand argue that the probability of commercial use is sufficient to value the property by using commercial comparables.
Plaintiff properly points out that the highest and best use for expropriated property must be based on reasonable expectation that it may be so used, employed or *380 developed in the not too distant future. It is not necessary that subject property be in commercial use, but the probability of commercial use must be evident. Whereas plaintiff argues that the subject property does not meet this test, we believe that the testimony of defendants’ witnesses is sufficient basis for the Trial Court to have reached its conclusion that the highest and best use of the subject property is commercial. Furthermore the comparables referred to by defendants’ witnesses in testimony and in their written reports are ample evidence on which the Trial Judge could base the amount of the award he made.
For the above and foregoing reasons, the /udgment of the Lower Court is confirmed, all costs of this appeal to be paid by plaintiff-appellant, as permitted by law.
Judgment affirmed.